IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Betty M. Smith, | ) | C/A No.: 1:14-489-DCN-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

      This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civ. Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

I.    Relevant Background

    A.    Procedural History

      On November 29, 2010, Plaintiff filed an application for SSI in which she alleged her disability began on July 15, 2010. Tr. at 169–77. Her application was denied initially and upon reconsideration. Tr. at 153–56, 161–63. On May 25, 2012, Plaintiff had a

hearing before Administrative Law Judge ("ALJ") Ivar E. Avots. Tr. at 57–103 (Hr'g Tr.). The ALJ issued an unfavorable decision on October 4, 2012, finding that Plaintiff was not disabled within the meaning of the Act. Tr. at 13–31. Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. Tr. at 1–4. Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on February 24, 2014. [ECF No. 1].

**B.**    **Plaintiff's Background and Medical History**

**1.**    **Background**

Plaintiff was 53 years old at the time of the hearing. Tr. at 62. She completed high school. Tr. at 63. Her past relevant work ("PRW") was as a weaver. Tr. at 96. Although Plaintiff initially alleged an onset date of disability of July 15, 2010, she subsequently amended her alleged onset date to December 30, 2008, and requested that a July 2010 hearing decision in claims for Disability Insurance Benefits ("DIB") and SSI be reopened. *See* Tr. at 169, 324–25.

**2.**    **Medical History**

**a.**    **Evidence Reviewed By ALJ**

On November 23, 2009, Plaintiff presented to Carolina Pulmonary and Sleep Medicine Consultants, P.A. ("Carolina Pulmonary"), for a recheck of moderate-to-severe asthma. Tr. at 356. She complained of a cough that had lasted for months. *Id.* Stephen H. Hand, M.D. ("Dr. Hand"), noted that Plaintiff experienced shortness of breath and that her cough had failed to improve with antibiotics. Tr. at 359.

Plaintiff followed up with Dr. Hand on December 1, 2009. Tr. at 353. She complained of acute cough, headache, and excess sputum. *Id.* She had expiratory and inspiratory wheezing. Tr. at 355. Dr. Hand diagnosed an acute exacerbation of asthma, chronic sinusitis, and allergic rhinitis and prescribed Prednisone and Augmentin. *Id.*

Plaintiff saw psychiatrist Susan T. Martin, M.D. ("Dr. S. Martin"), on December 15, 2009. Tr. at 407. She reported poor sleep, increased appetite, and depressed mood. *Id.* She denied suicidal or homicidal ideations, psychoses, and negative side effects from medications. *Id.* Dr. S. Martin instructed her to return in two months.

On January 7, 2010, Plaintiff presented to Dr. Hand for a recheck of asthma. Tr. at 349. He indicated Plaintiff's asthma was improved and instructed Plaintiff to follow up in six months. Tr. at 352.

On January 8, 2010, Plaintiff presented to Sherri Cheek, APRN-BC ("Ms. Cheek"). Tr. at 360. Plaintiff indicated that her back pain was tolerable with use of Ultram and Zanaflex and her insomnia was improved, but she still awoke during the night. *Id.* Plaintiff complained of increased shortness of breath, and Ms. Cheek noted that Plaintiff used oxygen continuously. *Id.* Plaintiff complained of fatigue, weight gain, dyspnea, and intermittent coughing and wheezing. *Id.* Ms. Cheek observed Plaintiff to have normal breathing and breath sounds. Tr. at 361.

Plaintiff presented to psychiatrist Ernest C. Martin, M.D. ("Dr. E. Martin"), on February 9, 2010. Tr. at 407. She reported some forgetfulness, but denied suicidal and homicidal ideations, psychoses, and negative side effects from medications. *Id.* Her sleep and appetite were adequate. *Id.* Dr. E. Martin continued Plaintiff's medications. *Id.*

Plaintiff visited Dr. S. Martin on April 6, 2010. Tr. at 406. Dr. S. Martin noted that Plaintiff appeared sad, tearful, and depressed. *Id.* Plaintiff indicated her mood had worsened and she had difficulty concentrating. *Id.* Dr. S. Martin indicated Plaintiff had good insight and judgment and no suicidal ideations, homicidal ideations, psychoses, or negative side effects. *Id.* She increased Plaintiff's Prozac dosage to 60 mg. *Id.*

Dr. E. Martin completed a medical source statement in which he indicated Plaintiff had marked limitation in her abilities to understand and remember complex instructions, to carry out complex instructions, to make judgments on complex work-related decisions, and to respond appropriately to usual work situations and to changes in a routine work setting. Tr. at 494–95. He assessed moderate limitations in Plaintiff's abilities to understand and remember simple instructions, to carry out simple instructions, to make judgments on simple work-related decisions, to interact appropriately with the public, and to interact appropriately with supervisors. *Id.* He indicated Plaintiff was unable to manage benefits in her own best interest. Tr. at 496. Dr. E. Martin indicated that his assessment was supported by "subjective discussion with patient during visit." Tr. at 495. He also indicated Plaintiff complained of "significant discomfort from carrying oxygen" and "loss of concentration and memory due to lack of oxygen and pain from back, sometimes resulting in sciatica." *Id.*

Plaintiff followed up with Dr. S. Martin on May 4, 2010. Tr. at 405. Plaintiff reported mild depression and increased worry. *Id.* Dr. S. Martin observed that Plaintiff was slightly tearful and appeared with her oxygen tank. *Id.* Plaintiff's insight and

judgment were good and she denied suicidal or homicidal ideations or plan. *Id.* Dr. S. Martin continued Plaintiff's medications and instructed her to follow up in one month. *Id.*

Plaintiff followed up with Dr. E. Martin on June 1, 2010. Tr. at 404. Dr. E. Martin noted Plaintiff was doing well, but was using continuous oxygen for COPD. *Id.* Plaintiff denied complaints or side effects. *Id.* Dr. E. Martin indicated Plaintiff's mood was "alright" and her sleep and appetite were adequate. *Id.* Plaintiff denied suicidal or homicidal ideations or plans. *Id.* Dr. E. Martin continued Plaintiff's medications and instructed her to follow up in two months. *Id.*

Plaintiff presented to Calvin D. Bryant, M.D. ("Dr. Bryant"), on July 9, 2010. Tr. at 364. Plaintiff endorsed symptoms including fatigue, headaches, sleep disturbance, abnormal activity level, pruritis, hoarseness, sinusitis, throat pain, edema, dyspnea, palpitations, coughing, abdominal pain, nausea, heartburn, indigestion, urinary frequency, pelvic pain, polyuria, urinary dribbling, back pain, neck pain, loss of motion, joint pain and swelling, muscle pain, stiffness, weakness, cramps, local weakness, tingling, anxiety, change in sleep pattern, depression, and moodiness. Tr. at 365. She indicated that she used continuous oxygen, was weak, and could not lift or engage in any significant activity. Tr. at 364. Dr. Bryant noted that Plaintiff "continues to be significantly depressed despite numerous medications and numerous treatments in the past." *Id.* Dr. Bryant observed no other abnormalities. Tr. at 365–66. He recommended that Plaintiff modify her activities, rest, and apply heat to her back. Tr. at 366.

Plaintiff followed up with Dr. Bryant on July 26, 2010. Tr. at 368. She complained of persistent and increased weakness and pain in multiple joints, particularly her knees.

*Id.* Bilateral knee x-rays revealed mild degenerative joint disease. Tr. at 372. Dr. Bryant noted that Plaintiff was very emotional and was cried because she had recently received a denial in her disability claim. Tr. at 368. He indicated that he had been unable to adequately assess Plaintiff's functional ability and had offered to refer her to a physical therapist, but that she could not pay for the functional assessment. *Id.* Dr. Bryant noted that Plaintiff's shortness of breath was unchanged and that she had oxygen in place. *Id.* He stated that she continued "to be very depressed" and "to have significant difficulty with sleep, fatigue, joint pain, and multiple other somatic complaints." *Id.* Dr. Bryant administered a Toradol injection. Tr. at 371.

Plaintiff followed up with Dr. S. Martin on July 27, 2010. Tr. at 402. Plaintiff presented with oxygen. *Id.* She denied suicidal or homicidal ideations or plan and psychosis. *Id.* She complained of grogginess upon awakening while taking Trazodone. *Id.* Dr. S. Martin discontinued Trazodone and prescribed Remeron 30 mg. *Id.*

An abdominal ultrasound on July 28, 2010, revealed hepatomegaly, hepatic steatosis, and borderline-mild splenomegaly. Tr. at 389.

On July 30, 2010, Plaintiff presented to Dr. Hand for a recheck of moderate-to-severe asthma. Tr. at 346. Dr. Hand indicated Plaintiff's asthma had improved and he decreased her prescription for Advair. Tr. at 347.

Plaintiff followed up with Dr. E. Martin on August 24, 2010. Tr. at 403. She reported depression and discouragement after being denied disability benefits. *Id.* Dr. E. Martin noted that Plaintiff required continuous oxygen. *Id.* Plaintiff denied suicidal or homicidal ideations or plan. *Id.* She indicated her appetite was fair and sleep was poor,

averaging about four hours per night. Tr. at 403. Dr. E. Martin increased Plaintiff's prescription for Xanax. *Id.*

On September 21, 2010, Plaintiff presented to Dr. E. Martin for a monthly follow up visit. Tr. at 401. Plaintiff reported low energy and breathing difficulty. *Id.* She was tearful and depressed. *Id.* Plaintiff endorsed no suicidal or homicidal ideation or plan and demonstrated no evidence of psychosis. *Id.* Dr. E. Martin discontinued Plaintiff's prescription for Remeron and prescribed Oleptro. *Id.*

Plaintiff followed up with Dr. E. Martin, on October 19, 2010. Tr. at 400. She reported depression and difficulty sleeping and was tearful at times. *Id.* Plaintiff denied suicidal or homicidal ideations or plan, auditory or visual hallucinations, and paranoid ideations. *Id.* Dr. E. Martin discontinued Trazodone, prescribed Pamelor, and refilled Xanax and Prozac. *Id.*

Plaintiff presented to Jennifer Myers, APRN, BC ("Ms. Myers"), on November 23, 2010. Tr. at 374. She reported shortness of breath and cough over the course of the prior month. *Id.* A chest x-ray was normal. Tr. at 378. Ms. Myers noted that Plaintiff had oxygen that "she usually just wears at night and as needed, but she had felt the need to wear it almost constantly for the past several weeks, especially when she goes out." Tr. at 374. Plaintiff also complained of neck pain, back pain, and insomnia. *Id.* An x-ray of Plaintiff's lumbar spine indicated moderate degenerative joint disease, but no other abnormalities. Tr. at 380. Plaintiff endorsed fatigue, dyspnea, wheezing, increased sputum, muscle pain, stiffness, and paresthesias in the tips of the fingers of her right hand. Tr. at 375. Ms. Myers observed no abnormalities during the examination. Tr. at

376. She diagnosed insomnia, backache, acute bronchitis, chronic obstructive asthma, cervicalgia, and disturbance of skin sensation. *Id.*

Plaintiff also followed up with Dr. E. Martin, on November 23, 2010. Tr. at 399. Plaintiff reported that Pamelor caused increased drowsiness and did not help her anxiety. *Id.* Plaintiff demonstrated depressed mood and congruent affect. *Id.* She denied suicidal or homicidal ideations and psychosis. *Id.* Her sleep was poor to fair and her appetite was fair. *Id.* Dr. E. Martin discontinued Pamelor, prescribed Oleptro, and refilled Xanax and Prozac. *Id.*

Plaintiff followed up with Ms. Myers on December 8, 2010. Tr. at 382. She reported feeling somewhat better, but continued to complain of chest congestion and a productive cough. *Id.* Plaintiff reported that she was using oxygen "on a continual basis." *Id.* Plaintiff complained of numbness and tingling of her right middle, ring, and index fingers. *Id.* Ms. Myers speculated that the numbness in Plaintiff's fingers could be the result of degenerative disc disease in her neck or nerve damage resulting from a past cut to the tip of her middle finger. *Id.* Ms. Myers observed diminished sensation in the tips of the second, third, and fourth digits of Plaintiff's right hand. Tr. at 384. She also noted that Plaintiff was wearing oxygen during the examination. *Id.* She described Plaintiff's mood as euthymic and blunted. *Id.*

Plaintiff followed up with Dr. S. Martin, on December 21, 2010. Tr. at 398. Dr. Martin noted that Plaintiff brought her oxygen into the office and that she was "breathing real heavy." *Id.* Dr. S. Martin also indicated Plaintiff was "a little tearful." *Id.* Plaintiff reported improved sleep, but stated she craved chocolate. *Id.* Plaintiff denied suicidal or

homicidal ideations, psychosis, and side effects. *Id.* Dr. Martin continued her medications and instructed her to follow up in one month. *Id.*

On January 5, 2011, Plaintiff complained to Ms. Myers that her medications did not adequately control her back pain. Tr. at 385. Plaintiff also reported sinus pain and runny nose. *Id.* Ms. Myers noted that Plaintiff had wheezing and a deep cough and "continues to wear her oxygen continuously." *Id.* She diagnosed chronic obstructive asthma, acute sinusitis, backache, and acute upper respiratory infection. *Id.*

On January 18, 2011, Dr. Martin indicated Plaintiff denied suicidal or homicidal ideations and had no psychosis or side effects. Tr. at 397. Plaintiff's sleep and appetite were adequate. *Id.* Dr. Martin continued Plaintiff's medications and instructed her to return in one month. *Id.*

Plaintiff followed up with Ms. Myers on January 19, 2011 Tr. at 411. She complained of back pain, cough, and chest congestion and requested that her prescription for Lidoderm patches be refilled. *Id.* Plaintiff indicated her breathing improved with the increased dose of Advair. *Id.* She complained of fatigue, nasal obstruction/discharge, coughing, wheezing, sputum, back pain, loss of motion, muscle pain, and stiffness. Tr. at 412. Ms. Myers observed Plaintiff to have scattered wheezes and euthymic mood, but no other abnormalities. *Id.* Ms. Myers indicated she would start Plaintiff on Spiriva and decrease her Advair dosage since her breathing was stable. Tr. at 411. On February 2, 2011, Plaintiff reported that the Spiriva worked well and that her breathing had improved. Tr. at 414.

On February 2, 2011, Plaintiff complained to Ms. Myers of nasal obstruction/discharge, coughing, wheezing, back pain, and muscle pain. Tr. at 446. Ms. Myers observed Plaintiff to have normal cough, effortless breathing, slight wheezing, and to be using a portable oxygen tank. *Id.* Ms. Myers refilled Spiriva. Tr. at 447.

On February 9, 2011, state agency medical consultant Matthew Fox, M.D., completed a physical residual functional capacity assessment. Tr. at 416–23. He indicated Plaintiff could perform work with the following restrictions: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; sit (with normal breaks) for a total of about six hours in an eight-hour workday; occasionally climbing ramps/stairs; never climbing ladders/ropes/scaffolds; frequently handling and fingering with the left upper extremity; and avoiding concentrated exposure to fumes, odors, dusts, gases, poor ventilation and hazards. *Id.*

State agency psychologist Xanthia Harkness completed a psychiatric review technique on February 24, 2011, in which she indicated Plaintiff had depressive disorder, not otherwise specified ("NOS"). Tr. at 427. She assessed mild restriction of activities of daily living ("ADLs"), moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 434. Dr. Harkness also completed a mental residual functional capacity assessment in which she indicated Plaintiff was moderately limited in her abilities to understand and remember detailed instructions, to carry out detailed instructions, and to interact appropriately with the general public. Tr. at 438–39. She further indicated the following:

1.  Claimant is able to understand and remember simple instructions but could not understand and remember detailed instructions.
2.  Claimant is able to carry out short and simple instructions but not detailed instructions. Claimant is able to maintain attention and concentration for periods of at least 2 hours.
3.  Claimant would perform best in situations that do not require on-going interaction with the public.
4.  Claimant is able to be aware of normal hazards and take appropriate precautions.

Tr. at 440.

On March 15, 2011, Plaintiff complained of increased depression to Dr. E. Martin. Tr. at 509. Dr. E. Martin described Plaintiff's mood as moderately depressed and indicated her affect was shallow and mood congruent. *Id.* Plaintiff denied suicidal or homicidal ideations or plans. *Id.* Her sleep was fair-to-poor and her appetite was fair. *Id.* Dr. E. Martin refilled Plaintiff's medications, prescribed Nuvigil 250 mg, and administered a B12 injection. *Id.*

Plaintiff followed up with Dr. Hand on April 7, 2011. Tr. at 442. Dr. Hand noted that Plaintiff's asthma was severe and gradually worsening and that she had required three courses of antibiotics during the winter. *Id.* Plaintiff complained of increased shortness of breath. *Id.* Dr. Hand noted that Plaintiff's asthma was worse overall, but had improved "in the last few days since productive cough resolved." Tr. at 443.

On April 12, 2011, Plaintiff reported to Dr. S. Martin that Lamictal caused her to develop severe headaches. Tr. at 508. Plaintiff indicated that Ritalin helped her to function in the morning, but that she experienced racing thoughts during the night and obtained less than four hours of sleep. *Id.* Dr. S. Martin initially prescribed Risperdal 0.5 mg, but changed the prescription to Seroquel 50 mg, to be taken at bedtime. *Id.*

Plaintiff followed up with Ms. Myers for back pain on April 13, 2011. Tr. at 448. Plaintiff reported being unable to sleep for more than three to four hours per night. *Id.* She indicated improvement on Spiriva, but still used an oxygen tank continuously. *Id.* Plaintiff had slightly diminished lung sounds and was tearful, but Ms. Myers observed no other abnormalities. Tr. at 450. Ms. Myers recommended Plaintiff visit a pain management physician for evaluation and possible injections, but Plaintiff declined the referral. Tr. at 448.

Plaintiff followed up with Dr. Hand on May 10, 2011. Tr. at 454. Her asthma was described as severe, but improving with increased Advair. *Id.* Dr. Hand noted that Plaintiff's minimum oxygen saturation was 95 percent on room air and that a chest x-ray was negative. *Id.* He indicated that pulmonary function testing indicated moderate obstruction with FEV1 of 1.86 and diffusion within normal limits. *Id.* Dr. Hand indicated diagnoses of asthma, NOS, chest pain/left rib pain, and hypoxemia. Tr. at 456. He referred Plaintiff for a bone scan to determine the source of her chest pain. *Id.*

On July 12, 2011, Plaintiff complained to Dr. E. Martin of depression with daily crying spells. Tr. at 507. She described her sleep as fair-to-poor, averaging about five hours per night. *Id.* Plaintiff denied auditory or visual hallucinations and suicidal or homicidal ideations or plan. *Id.* Dr. E. Martin refilled Oleptro and Prozac, discontinued Neurontin, and increased Xanax to one milligram, one-half to one tablet every eight hours, as needed. *Id.*

On July 14, 2011, Plaintiff presented to David G. Cannon, Ph. D. ("Dr. Cannon"), for a psychological evaluation. Tr. at 466–67. Dr. Cannon indicated Plaintiff's affect was

moderately constricted, her mood was tense, and she seemed "possibly depressed." Tr. at 466. Dr. Cannon noted Plaintiff was using a portable oxygen unit. *Id.* Plaintiff reported constant depression, sad mood, loss of motivation, crying spells, occasional suicidal ideation, memory loss, and frequent anxiety accompanied by lightheadedness and motor tremor. *Id.* Plaintiff denied auditory and visual hallucinations. *Id.* Dr. Cannon indicated Plaintiff's judgment and insight seemed "basically intact" and she "seemed somewhat histrionic in manner." Tr. at 467. Dr. Cannon noted Plaintiff was able to recall only one out of three items after a four-minute delay, but was able to perform serial threes. *Id.* Dr. Cannon diagnosed adjustment disorder with mixed anxiety and depressed mood. *Id.* He indicated that Plaintiff had the following abilities:

> She should be able to manage funds affectively [sic]. She should be able to carry out social and daily self-care activities in an independent and sustained fashion. She should be able to maintain concentration and pace sufficiently to complete tasks in a timely fashion in a work environment. Of course, her reported medical difficulties could significantly impact her abilities in this area.

*Id.*

State agency medical consultant Robert Estock, M.D., completed a psychiatric review technique on July 19, 2011. Tr. at 468. He indicated Plaintiff had depressive disorder, NOS, and adjustment disorder with mixed anxiety. Tr. at 471. Dr. Estock assessed moderate restriction of ADLs, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. Tr. at 478. He also completed a mental residual functional capacity assessment in which he indicated Plaintiff was moderately limited in her abilities to understand and remember

detailed instructions, to carry out detailed instructions, and to maintain attention and concentration for extended periods. Tr. at 490. He provided the following assessment:

> Claimant is able to remember locations and work like procedures. She is able to understand [sic], remember and czrry [sic] out short simple instructions. She may have moderate difficulty handling more detailed instructions but likely can handle even these if they are broken down into simple 1–2 step tasks and she is given adequatevrehearsal [sic].

> Claimant is able to maintain attention sufficiently to complete simple 1–2 step tasks for periods of up to 2 hours without special supervision or extra rest periods.

Tr. at 492.

State agency medical consultant Robert H. Heilpern, M.D., completed a physical residual functional capacity assessment on July 19, 2011. Tr. at 483–89. He indicated that Plaintiff could perform work with the following restrictions: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk about six hours in an eight-hour day; sit for a total of about six hours in an eight-hour day; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds; frequently handle and finger with the left hand; avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc.; avoid all exposure to hazards; and avoid unprotected heights. Tr. at 482–89.

On October 4, 2011, Plaintiff reported to Dr. E. Martin that she was sleeping for four to four-and-a-half hours per night and that her appetite was poor. Tr. at 506. Plaintiff indicated her daughter was helping her with ADLs. *Id.* Dr. E. Martin indicated Plaintiff's affect was sad, her behavior/activity was slow, and her memory and attention/concentration were fair. *Id.* He noted Plaintiff's appearance, thought form, thought content, orientation, judgment, and insight were normal. *Id.* Dr. E. Martin made

14

no changes to Plaintiff's medications, but noted she was having difficulty obtaining them from the pharmacy. *Id.*

Plaintiff followed up with Dr. E. Martin on November 1, 2011. Tr. at 505. She reported her mind was wandering and she had decreased energy since July. *Id.* Plaintiff also indicated she had no appetite and that she performed ADLs with prompts. *Id.* Dr. E. Martin observed that Plaintiff was on oxygen. *Id.* He indicated that Plaintiff spoke in a monotone, had a depressed mood, had a sad affect, had fair attention/concentration, and had mildly impaired memory, judgment, and insight. *Id.* Plaintiff's appearance, behavior/activity, thought form, and thought content were normal. *Id.* Dr. E. Martin indicated some worsening in Plaintiff's condition.

On November 29, 2011, Plaintiff followed up with Dr. E. Martin. Tr. at 504. Dr. E. Martin noted that Plaintiff was using oxygen. *Id.* He indicated Plaintiff completed ADLs after being prompted, spoke in a monotone, and demonstrated a sad affect. *Id.* He indicated Plaintiff's memory, judgment, and insight were mildly impaired, but that her appearance, behavior/activity, thought form, thought content, and orientation were normal. *Id.* He discontinued Oleptro and restarted Trazodone. *Id.*

Plaintiff returned to Dr. E. Martin on February 7, 2012. Tr. at 503. Dr. E. Martin noted that Plaintiff had not received Seroquel until the day before the appointment. *Id.* He indicated Plaintiff's affect was sad and that she had mildly impaired memory, judgment, and insight. *Id.* He assessed her attention/concentration as fair. *Id.*

On March 5, 2012, Dr. E. Martin noted that Plaintiff had some initial insomnia. Tr. at 502. He indicated Plaintiff interacted and participated, had no change in appetite, had

15

normal grooming, had normal behavior/activity, had normal rate and rhythm of speech, had linear and goal-directed thoughts, had normal thought content, had no suicidal ideation, was fully oriented, and was independent in ADLs. *Id.* Dr. Martin noted mild impairment to Plaintiff's memory, judgment, and insight and fair attention/concentration. *Id.* He discontinued Viibryd and instructed Plaintiff to return in a month. *Id.* Plaintiff returned to Dr. E. Martin on April 2, 2012 Tr. at 501. Dr. E. Martin indicated no change in Plaintiff's impairments and refilled her prescriptions. *Id.*

Plaintiff followed up with Dr. E. Martin on April 30, 2012. Tr. at 500. Dr. E. Martin noted some worsening of Plaintiff's symptoms and increased Xanax to two milligrams, with one-half to one tablet to be taken every eight hours as needed. *Id.*

On May 11, 2012, Plaintiff underwent a psychometric assessment with C. David Tollison, Ph. D. Tr. at 510–11. Plaintiff read on a late-third grade level. Tr. at 510. She had a verbal IQ of 69, a performance IQ of 74, and a full scale IQ of 69. Tr. at 511. Dr. Tollison stated "with 95% statistical confidence that the patient's intelligence falls within the range of 66 to 74." *Id.* He indicated that the results of Plaintiff's academic achievement were consistent with her intellectual functioning. *Id.*

Dr. E. Martin completed a psychiatric review technique on May 15, 2012, for the period from September 5, 2007, to April 30, 2012. Tr. at 512–25. He indicated Plaintiff met Listings 12.05 and 12.06 and had coexisting nonmental impairments that required referral to another medical specialty. Tr. at 512. Dr. E. Martin considered Listing 12.04 for affective disorders and indicated Plaintiff had a disturbance of mood, accompanied by depressive syndrome characterized by anhedonia or pervasive loss of interest in almost

all activities, appetite disturbance with change in weight, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and thoughts of suicide. Tr. at 515. He considered Listing 12.06 for anxiety-related disorders and indicated Plaintiff had "anxiety disorder, NOS, secondary to COPD and depression" and that she had a "Hamilton Anxiety rating scale score of 27." Tr. at 517. Dr. Martin assessed marked restriction of ADLs, moderate difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation each of extended duration. Tr. at 522. Dr. E. Martin also completed a medical source statement in which he indicated Plaintiff could never deal with work stresses; could rarely deal with the public; could occasionally relate to co-workers, interact with supervisors, function independently, and maintain attention/concentration; and could frequently follow work rules and use judgment. Tr. at 526. Dr. E. Martin indicated his opinion was supported by the following findings:

> Anxiety, Low stress tolerance, inability to sustain focused [sic] and stay on task for prolonged periods of time. Becomes confused easily when given multi step tasks or processes. Low energy requires portable oxygen, compromised mobility, and pace secondary to arthritis and Lower back pain discomfort.

*Id.* He indicated Plaintiff could rarely understand, remember, and carry out complex job instructions; could occasionally understand, remember, and carry out detailed, but not complex, job instructions; and could frequently understand, remember, and carry out simple job instructions. Tr. at 527. He based this opinion on Plaintiff's "[p]oor ability to maintain focus for prolonged periods of time and complete tasks. Low frustration

tolerance. Difficulty with multiple step processes and tasks." *Id.* Dr. E. Martin indicated that Plaintiff could frequently maintain personal hygiene, behave in an emotionally-stable manner, and relate predictably in social situations. *Id.* He indicated Plaintiff could occasionally demonstrate reliability. *Id.* He based this opinion on "[n]umerous face to face interpersonal contacts with Mrs. Smith over past five years, observations with others in my office i.e. patients and staff." *Id.* Dr. Martin further stated "Ms. Smith would have difficulty where there are physical demands to the work such as sustained physical exertion[,] walking, lifting[,] etc. Also difficulty managing the stress of job demands[,] responsibilities, deadlines, dealing with the public." *Id.* He indicated Plaintiff could manage benefits in her own best interest. *Id.* Dr. E. Martin signed a statement indicating "[t]he limitations and opinions reflected on the Psychiatric Review Technique and Medical Source Statement (mental) forms which I have completed have been present since I first began treating this patient, and most probably present since at least 12/30/2008." Tr. at 528.

> b.    Evidence Submitted After ALJ's Decision

Plaintiff followed up with Dr. Hand on May 10, 2012. Tr. at 532. She reported snoring, excessive daytime sleepiness, frequent nocturnal awakenings, and acute cough. *Id.* Dr. Hand diagnosed asthma, NOS, acute bronchitis, hypoxemia, and sleep apnea. Tr. at 533–34.

On January 1, 2013, Dr. Hand completed a pulmonary residual functional capacity questionnaire. Tr. at 537–40. He indicated he treated Plaintiff annually and her diagnoses included "asthma, allergic rhinitis, abnormal alpha-1 antitrypsin phenotype (MS) w/

*illegible* level 138." Tr. at 537. Dr. Hand indicated Plaintiff's medical impairments were confirmed by decreased "FEF 25–75% of 1.36 (48% predicted) on PFT from 9/14/09, 6 minute walk 360 meters (70% predicted) on 10/5/09." *Id.* He noted Plaintiff's symptoms included shortness of breath, chest tightness, wheezing, episodic acute asthma, episodic acute bronchitis, and coughing. *Id.* Dr. Hand indicated Plaintiff's acute asthma attacks were precipitated by upper respiratory infection and allergens and that her attacks were moderate-to-severe. *Id.* He estimated Plaintiff's asthma attacks occurred one to two times per year and lasted from one to two weeks. *Id.* Dr. Hand indicated Plaintiff was not a malingerer, but he suggested that emotional factors contributed to the severity of her symptoms and functional limitations. *Id.* He indicated Plaintiff's experience of pain or other symptoms was frequently severe enough to interfere with attention and concentration needed to perform even simple work tasks, but he further indicated "musculoskeletal pain not related to asthma." Tr. at 538. Dr. Hand indicated Plaintiff was incapable of even low stress jobs because of the "combined effects of asthma, allergies, anxiety, musculoskeletal issues." *Id.* Dr. Hand indicated Plaintiff could walk for two city blocks without rest, sit for 30 minutes, and stand for five minutes at a time. *Id.* He estimated Plaintiff could sit for less than two hours during an eight-hour workday and stand for less than two hours during an eight-hour workday. Tr. at 539. He suggested Plaintiff would require frequent breaks lasting ten to fifteen minutes each throughout the course of an eight-hour workday. *Id.* He indicated Plaintiff was unable to lift, twist, stoop (bend), crouch/squat, climb stairs, or climb ladders. *Id.* He stated that she should avoid all exposure to extreme cold, extreme heat, high humidity, wetness, cigarette smoke,

perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. *Id.* Dr. Hand indicated Plaintiff's impairments were likely to produce good and bad days, but that she would likely be absent from work more than four days per month as a result of her impairments or treatment. Tr. at 540. Dr. Hand further indicated Plaintiff's ability to work would be limited by shortness of breath, wheezing, coughing, and anxiety. *Id.* He indicated that he had based his opinion on a review of records on his computer, the earliest of which were from 2009. *Id.*

    C.      The Administrative Proceedings

        1.      The Administrative Hearing

            a.      Plaintiff's Testimony

At the hearing on May 25, 2012, Plaintiff testified that she lived in a house with her daughter and two-year-old granddaughter. Tr. at 62. She stated she was 5'2" and weighed 195 pounds. *Id.* She indicated she was right-handed. Tr. at 63. She stated she failed the seventh or eighth grade and had speech and learning difficulties. *Id.* She obtained a high school diploma. *Id.*

Plaintiff testified that she worked for 25 years as a weaver at Springs Industries and left that job on May 12, 2003. Tr. at 64. She stated she also worked part-time at Moovies. *Id.* She indicated she filed a claim for workers' compensation. *Id.*

Plaintiff testified she had COPD, shortness of breath, wheezing, asthma, and allergies. Tr. at 67. She stated she was allergic to gas, fumes, pollen, perfumes, and "anything that's really strong." *Id.* She indicated she was on oxygen continuously and that she only removed it when she showered or if she had a sneezing attack. *Id.*, Tr. at 73.

20

Plaintiff testified that she experienced back pain that began after she was required to wear an air maid unit in the cotton mill. Tr. at 73. She indicated she had pain that radiated from her back to her left hip and down her left leg to her knee. Tr. at 74. She also indicated she had left shoulder pain that caused her difficulty in lifting her arms. *Id.* Plaintiff complained of left-sided abdominal pain, as well. Tr. at 75.

Plaintiff testified she received treatment from Dr. Martin for depression, anxiety, and panic attacks that occurred four to five days per week. Tr. at 76. She described her panic attacks as typically lasting for 20 minutes and being accompanied by rapid heartbeat, faintness, dizziness, and sweating. *Id.* Plaintiff also indicated she was becoming more forgetful. Tr. at 79.

Plaintiff testified that she typically awoke with severe congestion and numbness in her arms and fingers. Tr. at 68. She stated that she spent 15 to 20 minutes each morning coughing up phlegm. *Id.* She stated that she then took her medication, had breakfast, and administered a 20-minute nebulizer treatment. Tr. at 68–69. She testified that she would then rest because the nebulizer treatment elevates her heartrate. Tr. at 70.

Plaintiff testified she typically experienced five bad days and two good days per week. Tr. at 84. She stated that she remained in bed on bad days, but went into the den and socialized with her family on good days. *Id.*

Plaintiff testified that she experienced insomnia and feared falling asleep and being unable to wake up. Tr. at 71. She stated her oxygen level decreased during the night. *Id.* She indicated she had mild sleep apnea and slept with four pillows. *Id.*

Plaintiff testified that she always used a portable oxygen tank when she left her home. Tr. at 73. She indicated the tank lasted for two to three hours and she brought a backup unit if she expected to be away from home for a longer period. Tr. at 73–74.

Plaintiff testified she could sit for 20 to 30 minutes and stand for 15 to 20 minutes. Tr. at 74. She stated she was unable to climb steps due to shortness of breath. Tr. at 85. She indicated she could lift less than 10 pounds. *Id.* She stated that heat and humidity bothered her and cold air caused her to develop bronchitis. Tr. at 95.

Plaintiff testified that she microwaved meals and gathered her clothing to be washed. Tr. at 80. She stated she did not wash dishes, sweep, mop, vacuum, take out trash, or dust. *Id.* She indicated she did not go to the grocery store, movie theaters, or restaurants. Tr. at 82–83. She stated she rarely attended church or visited friends or relatives. Tr. at 81–82. She indicated she had a valid driver's license, but rarely drove. Tr. at 83–84.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Roy Sumpter reviewed the record and testified at the hearing. Tr. at 96. The VE categorized Plaintiff's PRW as a weaver as light in exertion with a specific vocational preparation ("SVP") of four. *Id.* The ALJ described a hypothetical individual of Plaintiff's vocational profile who was limited to simple, routine, repetitive tasks and one and two-step instructions for two-hour periods; could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; could sit, stand, or walk for six hours each in an eight-hour day; could occasionally climb ladders, ropes, or scaffolds; could frequently handle or finger with the left upper extremity; should avoid

concentrated exposure to hazards; should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; could interact occasionally with the public; and could interact appropriately with co-workers and supervisors in a stable, routine setting. Tr. at 97. The VE testified that the hypothetical individual could not perform Plaintiff's PRW. *Id.* The ALJ asked whether there were any other jobs in the regional or national economy that the hypothetical person could perform. *Id.* The VE identified jobs as an assembler, *Dictionary of Occupational Titles* ("*DOT*") number 739.687-030, with 239,000 positions nationally and 2,500 positions in South Carolina; a final inspector, *DOT* number 727.687-054, with 250,000 position nationally and 5,000 positions in South Carolina; and a shipping and receiving weigher, *DOT* number 222.387-074, with 73,000 positions nationally and 1,500 positions in South Carolina. Tr. at 98.

The ALJ then asked the VE to assume that the hypothetical individual could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; could sit, stand, and walk for six hours each in an eight-hour workday; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps or stairs; would be limited to frequently handling and fingering on the left; and would have the same environmental limitations as set forth in the first hypothetical. Tr. at 99. The VE testified that the jobs identified in response to the first hypothetical could all be performed. *Id.* The ALJ asked the VE to assume the individual should avoid exposure to hazards and asked if that would affect his response. *Id.* The VE testified that it would not. Tr. at 100.

The ALJ asked the VE to assume that the individual had marked limitation on her ability to respond to usual work situations and changes in the routine work setting to the

23

point that she could not tolerate two hours of work in an eight-hour day. *Id.* He asked if there would be any work for such an individual in the regional or national economy. *Id.* The VE testified that there would be no work. *Id.*

Plaintiff's attorney asked the VE to assume that the hypothetical individual had to be on continuous oxygen. *Id.* She asked if use of continuous oxygen would be accommodated by any work setting. Tr. at 100–01. The VE testified that it likely would not be tolerated at the identified skill level. Tr. at 101. He indicated that most employers would likely consider use of continuous oxygen and the need to change out tanks to be disruptive to the individual's and her coworkers' productivity. *Id.* The ALJ stated that hireability was not a factor he could consider and that he was striking any answer that referred to hireability. *Id.* Plaintiff's attorney then asked if more than three absences per month would be tolerated. Tr. at 102. The VE testified that it would not be allowed. *Id.*

### 2.    The ALJ's Findings

In his decision dated October 4, 2012, the ALJ made the following findings of fact and conclusions of law:

1.    Claimant has not engaged in substantial gainful activity since December 30, 2008, the amended alleged onset date (20 CFR 416.971 *et seq.*).
2.    Claimant has the following severe combination of impairments: chronic obstructive pulmonary disease (COPD), degenerative disc disease, depression, and anxiety (20 CFR 416.920(c)).
3.    Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
4.    After careful consideration of the entire record, I find claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) (lift/carry, push/pull 20 pounds occasionally, 10 pounds frequently, sit, stand, and walk about 6 hours each in an 8-hour day) except

she could climb ramps or stairs occasionally, but never ladders, ropes, or scaffolds. Claimant could balance, stoop, kneel, crouch, or crawl frequently. Her ability to manipulate objects is limited to handling and fingering frequently with her left hand. She has no limitation on her right. Claimant should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation. She should avoid all exposure to hazards such as unprotected heights. Claimant can concentrate, persist, and work at pace to perform simple routine and repetitive tasks with 1 to 2 step instructions for 2-hour periods in an 8-hour workday. She could interact occasionally with the public and interact appropriately with coworkers and supervisors in a stable and routine setting.

5.    Claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    Claimant was born on March 7, 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.    Claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 416.969, and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since November 29, 2010, the date the application was filed (20 CFR 416.920(g)).

Tr. at 18–26.

### 3.    Appeals Council Review

On January 16, 2014, the Appeals Council denied Plaintiff's request for review.

Tr. at 1–4. It wrote the following:

In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence of

record. We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

Tr. at 1–2. The Appeals Council incorporated additional evidence into the record, including a representative brief dated January 4, 2013, medical records from AnMed Health dated May 10, 2012, a pulmonary RFC form from Dr. Hand, and medical records from AnMed Health and Carolina Pulmonary and Sleep Medicine, dated March 4, 2008, through January 3, 2013. Tr. at 4.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

1)    the Appeals Council failed to consider new and material evidence submitted by Plaintiff's treating physician;

2)    the ALJ erred in failing to reopen the prior claim and the record before the court is incomplete and inadequate to permit informed and meaningful judicial review;

3)    the ALJ did not adequately consider the Workers' Compensation Commission's determination that Plaintiff was permanently and totally disabled;

4)    the ALJ failed to set forth good cause for rejecting Dr. Martin's opinion; and

5)    the ALJ neglected to consider the side effects of Plaintiff's medications and her need for continuous oxygen.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen*

impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents her from doing substantial gainful employment. *See* 20 C.F.R. §§ 404.1520, 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, §§ 404.1520(a), (b), 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v.*

---

*v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

*Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is

substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

1.     New and Material Evidence

Plaintiff argues that the ALJ's decision was not supported by substantial evidence in light of new and material evidence submitted to the Appeals Council. [ECF No. 16 at 11]. Plaintiff argues that the evidence is material because Dr. Hand was her treating physician and he rendered an opinion regarding her ability to function. *Id.* at 12. Plaintiff argues that the Fourth Circuit's holding in *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), directs that the claim should be remanded. *Id.* at 11–14. Plaintiff further maintains that the Appeals Council accepted the evidence as new and material. [ECF No. 19 at 5].

The Commissioner argues the Appeals Council reasonably found that Dr. Hand's assessment and the other evidence submitted after the ALJ's decision provided no basis for changing the ALJ's decision. [ECF No. 18 at 13]. The Commissioner argues that Plaintiff has not shown that the evidence submitted to the Appeals Council was new, that it was material, or that there was good cause for Plaintiff's failure to incorporate it in the prior proceeding. *Id.* at 14.

The regulations "specifically permit claimants to submit additional evidence, not before the ALJ, when requesting review by the Appeals Council." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011). "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or

before the date of the administrative law judge hearing decision." 20 C.F.R. § 416.1470(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" *Meyer*, 662 F.3d at 705, *citing Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). If the new and material evidence relates to the period on or before the date of the ALJ's hearing decision, the Appeals Council should evaluate it as part of the entire record. 20 C.F.R. § 416.970(b). "[I]f the Appeals Council finds that the ALJ's 'action, findings, or conclusion is contrary to the weight of the evidence currently of record,'" it shall grant the request for review and either issue its own decision or remand the case to the ALJ for consideration of the evidence. *Meyer*, 662 F.3d at 705, *citing* 20 C.F.R. § 404.967, 404.977(a), and 404.979. However, if after reviewing the entire record, including the new and material evidence, the Appeals Council "finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review" without explaining its rationale. *Id.*

"A district court may remand a final decision of the Secretary only as provided in sentences four and six of 42 U.S.C. § 405(g): in conjunction with a judgment affirming, modifying, or reversing the Secretary's decision (sentence four), or in light of additional evidence without any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier (sentence six)." *Melkonyan v. Sullivan*, 501 U.S. 89, 90 (1991).

The undersigned recommends a finding that Plaintiff presented new and material evidence at the administrative level and that the Commissioner's action with respect to that evidence is reviewable under sentence four of 42 U.S.C. § 405(g). The Commissioner argues that the court is without authority to remand the claim based on new and material evidence because Plaintiff failed to satisfy the requisite criteria under sentence six of 42 U.S.C. § 405(g). *See* ECF No. 18 at 13–14. However, remand under sentence six is contemplated only when a plaintiff seeks to admit new evidence that was not part of the administrative record. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990) ("The sixth sentence of § 405(g) plainly describes an entirely different kind of remand, appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."). Here, the evidence in question was included in the administrative record, and Plaintiff is not held to the criteria necessary for remand under sentence six.[3] In addition, the Appeals Council accepted the evidence at issue as being new and material. In *Meyer*, the Fourth Circuit explained that when new evidence is submitted to the Appeals Council that was not before the ALJ, "the Appeals Council first determines if the submission constitutes 'new and material evidence' that 'relates to the period on or before the date of the [ALJ's] hearing decision.'" *Meyer*, 662 F.3d at

---

[3] In *Wilkins*, the Fourth Circuit indicated that "there is no requirement that a claimant show good cause when seeking to present new evidence before the Appeals Council." 953 F.2d at 96, n. 3. Because the evidence in question was presented to the Appeals Council and not for the first time to this court, Plaintiff was not required to show good cause for failing to submit Dr. Hand's opinion at an earlier time in the administrative process.

704–05. The Appeals Council determined the evidence to be new and material by accepting and considering the evidence. *See* Tr. at 1–2, 4. Therefore, the court's authority to consider the Commissioner's treatment of the evidence falls under sentence four of 42 U.S.C. § 405(g).

In view of the foregoing, the undersigned considers whether the Appeals Council's decision to deny review was supported by substantial evidence and whether it applied the proper legal standards in reviewing the evidence.

In *Meyer*, the court remanded the case where the Appeals Council denied review after including in the record an opinion from the plaintiff's treating physician. 662 F.3d 707. Although the court emphasized "the weight afforded the opinion of a treating physician," it indicated that the court had previously "affirmed an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council because we concluded that 'substantial evidence support[ed] the ALJ's findings.'" *Id.*, *citing Smith v. Chater*, 99 F.3d 635, 638–39 (4th Cir. 1996). The court also indicated that it had reversed an ALJ's decision "when consideration of the record as a whole revealed that new evidence from a treating physician was not controverted by other evidence in the record." *Id.*, *citing Wilkins*, 953 F.2d at 96. The *Meyer* court concluded that the evidence was "not as one-sided as that in *Smith* or *Wilkins*" and remanded the case because no fact finder had made "any findings as to the treating physician's opinion or attempted to reconcile that evidence with the conflicting and supporting evidence in the record." *Id.*[4]

---

[4] The Commissioner argues that this case differs from *Meyer* in that the ALJ in *Meyer* supported his decision by indicating that the record lacked "restrictions placed on the

As in *Meyer*, the new and material evidence in this case is supported by some evidence in the record and conflicts with other evidence. Dr. Hand was Plaintiff's treating pulmonologist and he was the only treating physician to assess Plaintiff's physical residual functional capacity. *See* Tr. at 537–40. Dr. Hand indicated restrictions that would likely be considered work-preclusive. *See* Tr. at 538–40. He identified symptoms that were generally consistent with his treatment notes. *Compare* Tr. at 356 (constant cough and shortness of breath), 359 (cough did not respond to antibiotics), 353 (expiratory and inspiratory wheezing), 442 (asthma worsened; required three doses of antibiotics during winter), and 532 (acute bronchitis), *with* Tr. at 537 (shortness of breath, chest tightness, wheezing, episodic acute asthma, episodic acute bronchitis, and coughing). The restrictions he identified were also consistent with Plaintiff's testimony and with observations from her other treating physicians. *See* Tr. at 67, 74, 84, 85, 360, 368, 376, 382, 385, 412, 446, 450. However, Dr. Hand's opinion is not uncontroverted. Both the ALJ and Dr. Hand cited objective testing to support their conclusions, but they cited different tests and noted different findings. *See* Tr. at 20–21 (negative chest x-ray; spirometry indicated moderate obstructive lung defect, airway obstruction, diffusion capacity within normal limits, good response to bronchodilators; and no desaturation and 95 percent oxygen on stress test); *see also* Tr. at 537 (pulmonary function test on September 14, 2009, indicated decreased FEF 25–75 of 1.36 (48 percent of predicted);

claimant by a treating physician," but the ALJ in this case made no mention of a lack of restrictions from Plaintiff's treating physician. [ECF No. 18 at 18, n. 5], *citing* 662 F.3d at 707. Although the court cited this factor in *Meyer*, it was but one of several factors that indicated remand was appropriate where there was no evidence to suggest the supporting and conflicting evidence was weighed by the fact finder.

six minute walk of 360 meters (70 percent of predicted) on October 5, 2009). Dr. Hand's opinion is also inconsistent with the opinions of the state agency physicians to which the ALJ assigned great weight. *See* Tr. at 22–23. Here, as in *Meyer*, the record does not indicate that a fact finder has considered the treating physician's opinion or weighed the conflicting evidence. Although the Commissioner cites evidence that she contends conflicts with Dr. Hand's assessment, the undersigned notes that neither the ALJ nor the Appeals Council discussed any of these records or referenced Plaintiff's treatment with Dr. Hand. *See* Tr. at 1–4, 18–26; ECF No. 18 at 16-17. Therefore, the undersigned is unable to find that substantial evidence supports the Appeals Council's decision to deny review.

> 2.    Adequacy of Record for Judicial Review and Refusal of ALJ to Reopen Record

Prior to the hearing, Plaintiff submitted an amended decision and order from the South Carolina Workers' Compensation Commission dated June 16, 2004, finding that Plaintiff was permanently and totally disabled as a result of long-term exposure to cotton dust and entitled to 500 weeks of compensation. Tr. at 198–209. She also submitted a consent order dated December 6, 2006, in which Plaintiff and her employer agreed to a lump sum award of $144,801.20. Tr. at 210–11. Through a letter prior to the hearing and verbally during the hearing, Plaintiff's attorney moved to reopen the record from the claim decided on July 14, 2010, and to amend Plaintiff's alleged onset date of disability to December 30, 2008. Tr. at 60–61, 324–25.

Plaintiff argues that the administrative record is incomplete and inaccurate for judicial review because the Commissioner failed to include records from the claim decided on July 14, 2010. [ECF No. 16 at 14]. She maintains that the Commissioner was required to include the records from the prior claim in the administrative record because she moved to reopen the prior claim and amended her alleged onset date. *Id.* at 15. She argues that because the workers' compensation decisions were not considered as part her prior claim, they provided sufficient grounds for reopening the claim. *Id.* at 16. She also contends that because she amended her alleged onset date to December 30, 2008, the Commissioner was required to include records going back to at least the amended alleged onset date. [ECF No. 19 at 9].

The Commissioner argues that the record includes all evidence relevant to the current claim for benefits. [ECF No. 18 at 19]. She maintains that this court is not authorized to consider the ALJ's refusal to reopen the prior claim. *Id.*

"As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of record including the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g). "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

The parties agree that the Commissioner did not include in the transcript of record evidence from Plaintiff's prior claim, but they disagree on whether the Commissioner was required to do so. *See* ECF Nos. 16 at 14–15; 18 at 19. To resolve this conflict, the

undersigned must address whether this court has the authority to review the ALJ's decision to deny Plaintiff's request to reopen the prior claim. If the court is without authority to review that decision, the records from the prior claim are unnecessary for meaningful judicial review.

The Code of Federal Regulations provides for the reopening of decisions in DIB and SSI claims "within two years of the date of the notice of the initial determination if we find good cause," as defined in 20 C.F.R. § 404.989 and 416.1489, "to reopen the case." 20 C.F.R. §§ 404.988, 416.1488. Good cause will be found where "(1) [n]ew and material evidence is furnished; (2) a clerical error was made; or (3) the evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. §§ 404.989(a), 416.1489(a).

In *Califano v. Sanders*, 430 U.S. 99, 105–08 (1977), the Supreme Court held that neither the Administrative Procedures Act nor the Social Security Act conferred jurisdiction to district courts to review the SSA's decision not to reopen a prior claim, absent a constitutional challenge.. The doctrine of res judicata prevents subsequent courts from reviewing a final judgment on the merits of a case "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1876). The Fourth Circuit held in *McGowen v. Harris*, 666 F.2d 60, 65–66 (4th Cir. 1981), that jurisdiction to review an agency's decision not to reopen a prior claim exists to the extent necessary to determine whether res judicata was properly applied and when it appears from the record that the agency has reconsidered the

merits of the prior claim to any extent.. "If the identity of claims or the fact of reopening is otherwise apparent as a matter of law from the district court record, the determination may of course be made on that basis." *Id.* at 66. The relevant question is whether the ALJ, "though purporting to deny reopening on grounds of administrative res judicata, actually reopened the initial determination for reconsideration on the merits." *Hall v. Chater,* 52 F.3d 518, 520 (4th Cir. 1995). The ALJ "must be accorded some leeway in making a decision whether to reopen, so that he may 'in fairness look far enough into the proffered factual and legal support to determine whether it is the same claim.'" *Id.* at 521 (*quoting McGowen*, 666 F.2d at 67).

The ALJ indicated the following: "I have considered the prior decisions and findings; however, new and material evidence indicates claimant's limitations have slightly worsened but do not result in a total disability finding (Albright v. Commissioner of Social Security Administration, 174 F.3d 473 (4th Cer. [sic] 1999))." Tr. at 22.

The undersigned recommends a finding that the court lacks the authority to review the ALJ's denial of Plaintiff's motion to reopen her prior claim. Plaintiff's claim was barred by res judicata because she sought to reopen the same claim that was decided in the July 14, 2010, ALJ decision. Plaintiff presents no constitutional challenge to the ALJ's decision to deny her request and a review of the record yields no evidence in the ALJ's decision to suggest that he actually reopened the prior claim for consideration on the merits. The ALJ found that, while Plaintiff's impairments had "slightly worsened," she was still capable of engaging in work activity. *See* Tr. at 22, 24–25. He did not discuss any details of the prior claim and his consideration of the prior claim seems to fall

within the leeway referenced in *McGowen* and *Hall*. Therefore, based on the Supreme Court's holding in *Califano* and the doctrine of res judicata, the court is without authority to consider the ALJ's decision to deny Plaintiff's motion to reopen the prior claim. Because the record contains evidence for the period relevant to the current claim for benefits, the undersigned recommends a finding that the record is adequate for judicial review.[5]

### 3.     Workers' Compensation Decision

Plaintiff argues that the ALJ failed to comply with the requirements of SSR 06-03p because he provided no valid reasons for disregarding the final state agency decision from the Workers' Compensation Commission. *Id.* at 17. The Commissioner argues that the ALJ adequately evaluated Plaintiff's workers' compensation award and determined that it was neither consistent with nor supported by the totality of the evidence. [ECF No. 18 at 20–21].

The Social Security Administration is not bound by disability determinations rendered by other governmental and nongovernmental agencies.

---

[5] Even if the court had the authority to consider the ALJ's decision not to reopen the prior application, Plaintiff failed to show good cause for reopening the prior claim under 20 C.F.R. §§ 404.988 and 416.1488. Contrary to Plaintiff's argument, the record reflects that evidence of her workers' compensation award was considered as part of an earlier application. In May 14, 2008, decision, the ALJ specified that much of the medical evidence "relates to the claimant's Worker's Compensation Claim" and that "the Social Security Regulations and Medical Listings are not the same as, or regulated by another agency's findings (SSR 96-5P)." Tr. at 114. Because the workers' compensation decisions were considered in the 2008 ALJ decision, they were not new and material evidence under 20 C.F.R. §§ 404.989(a) and 416.1489(a) and did not provide good cause for reopening the prior claim under 20 C.F.R. §§ 404.988 and 416.1488.

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rule and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency (e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company) that you are disabled or blind is not binding on us.

20 C.F.R. § 416.904. However, disability decisions rendered by other governmental and nongovernmental agencies must be considered, along with all other relevant evidence in the case record. SSR 06-3p. The ALJ should explain the consideration given to the findings of other agencies in the notice of decision. *Id.*

The undersigned recommends a finding that the ALJ adequately considered the decisions in Plaintiff's workers' compensation claim. The ALJ explained that he considered the decision in Plaintiff's workers' compensation claim, but that he was not bound by it because the Workers' Compensation Commission used different rules for determining disability than those used by the SSA. *See* Tr. at 22. The ALJ further indicated that, although he did not adopt their disability determination, he did use their determination to consider "the severity of claimant's impairments and how they affect her ability to function." *See id.* Because the ALJ explained the extent to which he considered the Workers' Compensation Commissioner's decision and provided a reasoned explanation for declining to adopt his findings, the ALJ complied with the requirements of SSR 06-3p.

4.     Treating Physician's Opinion

Plaintiff argues that the ALJ failed to set forth good cause for rejecting Dr. Martin's opinion and neglected to consider the factors set forth in 20 C.F.R. § 416.927.[6] [ECF No. 16 at 17]. The Commissioner maintains that the ALJ properly concluded that Dr. Martin's opinion was not supported by specific findings or the longitudinal record. [ECF No. 18 at 22–23].

If a treating source's medical opinion is "well-supported and not inconsistent with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 416.927(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record).

Pursuant to SSR 96-2p:

Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.

SSA rules require that the ALJ carefully consider medical opinions on all issues. SSR 96-5p. Pursuant to 20 C.F.R. § 416.927(c), if a treating source's opinion is not accorded controlling weight, the ALJ should consider "all of the following factors" to

---

[6] Plaintiff cites 20 C.F.R. § 404.1527, but because Plaintiff's remaining claim is for SSI only, the undersigned considers the identical SSI regulation.

determine the weight to be accorded to every medical opinion in the record: examining relationship; treatment relationship, including length of treatment relationship and frequency of examination and nature and extent of treatment relationship; supportability; consistency with the record as a whole; specialization of the medical source; and other factors. *See also Johnson*, 434 F.3d at 654. The ALJ's decision must explain the weight accorded to all opinion evidence. 20 C.F.R. § 416.927(e)(2)(ii). In all unfavorable and partially-favorable decisions and in fully-favorable decisions based in part on treating sources' opinions, the ALJ must include the following:

> [T]he notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight.

SSR 96-2p.

The ALJ summarized parts of Dr. Martin's opinions and rejected the opinions for the following reasons:

> Dr. Martin indicated his assessment was based on claimant's subjective complaints after discussion with the claimant (See 18F/1). His treating notes do not support findings of such severity, and I give little weight to such check-box type forms unsupported by specific findings and the longitudinal record. Such forms appear to be created solely for purposes of obtaining benefits for the claimant in this claim.

Tr. at 22.

The undersigned recommends a finding that the ALJ failed to adequately assess Dr. Martin's opinion. The ALJ explained that he rejected Dr. Martin's opinion because it was inconsistent with his treatment notes and with the longitudinal record. Tr. at 22. The

ALJ also accorded great weight to Dr. Estock's opinion, which suggested Plaintiff had less severe limitations than those indicated by Dr. Martin. *See* Tr. at 23. The ALJ provided adequate reasons for finding Dr. Martin's opinion was not entitled to controlling weight. However, he failed to provide sufficient reasons for rejecting the opinion. As the opinion of Plaintiff's treating psychiatrist, Dr. Martin's opinion was entitled to deference. *See* SSR 96-2p. The ALJ failed to accord Dr. Martin's opinion appropriate deference and neglected to address the factors in 20 C.F.R. § 416.927. The ALJ summarized parts of Dr. Martin's opinion and stated a general conclusion, but he failed to acknowledge the examining relationship, the treatment relationship, and Dr. Martin's specialization as a psychiatrist. *See* Tr. at 21–22. Although the ALJ addressed the supportability and consistency of Dr. Martin's opinion with the record as a whole, the ALJ summarily concluded that it was unsupported and failed to reference a single treatment note or other examining physician's observation to support his conclusion. *See* Tr. at 22. Therefore, the undersigned concludes that the ALJ did not address Dr. Martin's opinion in accordance with 20 C.F.R. § 416.927 and SSR 96-2p.

The undersigned further recommends a finding that the ALJ's reasons for rejecting Dr. Martin's opinion were not supported by substantial evidence. The ALJ was particularly critical of the "check-box type form" completed by Dr. Martin, but he assigned great weight to Dr. Estock's opinions, the first of which was rendered on the same form as Dr. Martin's opinion and the second of which was rendered on a strikingly similar check-box form. *Compare* Tr. at 468–81 (Psychiatric Review Technique, SSA-2506-BK), and Tr. at 490–92 (Mental Residual Functional Capacity Assessment, SSA

4734-F4-SUP), *with* Tr. at 494–95 (Medical Source Statement of Ability To Do Work-Related Activities, HA-1152-U3), Tr. at 512–25 (Psychiatric Review Technique, SSA-2506-BK), and Tr. at 526–27 (Medical Source Statement (Mental)). The ALJ also ignored specific findings and limitations referenced by Dr. Martin in his 2012 opinion, including his indication that Plaintiff's impairments met Listings 12.04 and 12.06.[7] *See* Tr. at 512–28. In light of Dr. Martin's treatment notes and Plaintiff's lengthy history of treatment with Dr. Martin, the undersigned is unable to find that the ALJ referenced substantial evidence to support his decision to reject Dr. Martin's opinion in favor of a non-treating, non-examining consultant's opinion rendered in nearly the same manner.

### 5.    Side Effects of Plaintiff's Medications

Plaintiff argues the ALJ ignored the requirements of SSR 96-7p when he neglected to consider the implications of side effects from her medications on her ability to perform work activity. [ECF No. 16 at 21]. Plaintiff further maintains that the ALJ failed to consider the implications of her need for continuous oxygen. *Id.* at 22.

The Commissioner argues that the ALJ properly found that Plaintiff's subjective complaints were only partially credible. [ECF No. 18 at 23–27].

After a claimant has established the existence of a medically-determinable impairment, the ALJ should consider the intensity, persistence, and functionally-limiting effects of her symptoms to determine the extent to which they affect the claimant's ability

---

[7] The ALJ specifically stated that "[n]o State Agency reviewer, consultant examiner, or treating physician has concluded claimant has impairments severe enough to meet or equal a listing," which suggests that the ALJ did not review the psychiatric review technique completed by Dr. Martin. *See* Tr. at 19.

to do basic work activities. SSR 96-7p. "[T]he adjudicator must carefully consider the individual's statement about symptoms with the rest of the relevant evidence in the case record" in determining whether the claimant's statements are credible. *Id.* To assess the credibility of the claimant's statements, the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." *Id.* The ALJ cannot disregard the claimant's statements about symptoms merely because they are not substantiated by objective medical evidence. *Id.* Furthermore, the ALJ must specify his reasons for the finding on credibility, and his reasons must be supported by the evidence in the case record. *Id.* The ALJ's decision must clearly indicate the weight accorded to the claimant's statements and the reasons for that weight. *Id.*

The ALJ should consider the following factors in addition to the objective medical evidence in assessing the credibility of a claimant's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 or 20 minutes every hour, or sleeping on a board);

and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* (*citing* 20 CFR §§ 404.1529(c) and 416.929(c)).

The ALJ acknowledged Plaintiff's testimony regarding her use of continuous oxygen, but concluded that "the medical record does not indicate that claimant requires oxygen continuously." *See* Tr. at 23. He further stated the following:

> [C]laimant was able to walk approximately 1/3 of a mile in 6 minutes per C19F/3, but has alleged she can only walk 30 to 50 feet and in effect can't do anything (See C3E and C7E). It appears she is vastly overstating her symptoms and complaints and understating her abilities. Her treating doctors and one time examiners have been complicit in this activity.

Tr. at 23–24.

The undersigned recommends a finding that the ALJ did not properly consider factors in addition to the objective medical evidence that supported Plaintiff's claim of a disabling impairment. Plaintiff testified that she used oxygen continuously. Tr. at 67. Her testimony was supported by multiple physicians' notes. *See* Tr. at 360, 364, 374, 382, 385, 403, 404, 448. Several physicians also observed that Plaintiff presented to appointments with a portable oxygen unit. *See* Tr. at 368, 384, 398, 402, 405, 446, 466, 504, and 505. Plaintiff had an active prescription from Dr. Hand for two liters of oxygen. *See* Tr. at 350, 354, 357, 388, 445, 455, 533. This evidence created a presumption that Plaintiff required continuous oxygen. However, the ALJ concluded that the medical record did not indicate Plaintiff required continuous oxygen. *See* Tr. at 23. He supported his conclusion with reference to a single medical record and summarily dismissed all of the medical evidence to the contrary by concluding that Plaintiff's physicians were

46

"complicit" in Plaintiff's efforts to overstate her symptoms and complaints and understate her abilities. *See* Tr. at 24. Pursuant to SSR 96-7p, the ALJ cannot disregard the claimant's statements merely because her symptoms are not supported by objective medical evidence. Therefore, the undersigned recommends a finding that the ALJ did not adequately consider evidence that suggested Plaintiff required continuous oxygen in accordance with the provisions of SSR 96-7p. The ALJ also neglected to address the side effects from medications that Plaintiff alleged in her testimony. *See* Tr. at 70. Therefore, on remand, the ALJ should assess Plaintiff's use of continuous oxygen and the side effects of her medications as part of the credibility determination.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence. Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

IT IS SO RECOMMENDED.


February 26, 2015                          Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).